[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10760

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LUIS ROBERTO MENDEZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cr-00232-WFJ-TGW-1

_____

_____

No. 22-11155

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SIMON HERRERA MALIANO,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cr-00232-WFJ-TGW-2

_____

Before BRANCH, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

In the summer of 2021, Luis Mendez and Simon Maliano had a run-in with the law. A military patrol aircraft caught them trafficking hundreds of pounds of cocaine in a speedboat off the

coast of Colombia.    When Mendez, Maliano, and a third confederate saw the authorities closing in, they sought to conceal their drug trafficking by dumping "bales" of cocaine into the ocean. These efforts were unsuccessful, though, and law enforcement agents recovered nearly 300 kilograms of cocaine from the sea.

When Coast Guard agents boarded the speedboat, they noticed that it "displayed no indicia of nationality." Mendez told the agents that he was the master of the vessel and claimed Colombian nationality. But the Colombian government would neither confirm nor deny that claim, so the vessel was deemed "without nationality." *See* 46 U.S.C. § 70502(d)(1)(c). That designation meant that the speedboat was "subject to the jurisdiction of the United States" under the Maritime Drug Law Enforcement Act. *Id.* § 70502(c)(1)(A).

A grand jury charged Mendez and Maliano with conspiring to possess—and aiding and abetting the possession of—five or more kilograms of cocaine with the intent to distribute it while onboard a vessel subject to the jurisdiction of the United States. Both Mendez and Maliano pleaded guilty to the conspiracy charge in exchange for the government dropping the aiding-and-abetting charge.

Still, shortly before sentencing Mendez filed a motion urging the district court to dismiss the indictment against him for lack of jurisdiction. He based his motion on § 70502(d)(1)(C) of the Maritime Drug Law Enforcement Act—the provision that subjected his speedboat to the jurisdiction of the United States

because it was a "vessel without nationality." *See id.* § 70502(c)(1)(A). Section 70502(d)(1)(C) defines a "vessel without nationality" as "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C). Quoting a now-withdrawn First Circuit decision, Mendez argued that this provision "expands the definition of a 'vessel without nationality' beyond the bounds of international law and thus unconstitutionally extends U.S. jurisdiction to foreigners on foreign vessels." *See United States v. Davila-Reyes*, 23 F.4th 153, 158 (1st Cir.), *reh'g en banc granted, opinion withdrawn,* 38 F.4th 288 (1st Cir. 2022).

The district court disagreed and denied Mendez's motion. Undeterred by his codefendant's defeat, Maliano filed his own motion to dismiss for lack of jurisdiction a month later. This too was denied. In the end, the court sentenced Mendez to 132 months' imprisonment and Maliano to 82 months' imprisonment. They now appeal, repeating the same argument they made below: that Congress exceeded its constitutional authority by defining a "vessel without nationality" to include vessels that were not recognized as "stateless" under international law.

We review their argument de novo, but our precedent squarely forecloses it. *See United States v. Canario-Vilomar*, 128 F.4th 1374, 1378 (11th Cir. 2025). Simply put: "international law cannot limit Congress's authority to define 'stateless vessel' for purposes

of" the Maritime Drug Law Enforcement Act. *Id.* at 1381. That's because Congress's constitutional power to "punish Piracies and Felonies committed on the high Seas" is "not limited by customary international law." U.S. Const. art. I, § 8, cl. 10; *United States v. Alfonso*, 104 F.4th 815, 826 (11th Cir. 2024). As a result, § 70502(d)(1)(C) is "a constitutional exercise of Congressional authority." *See Canario-Vilomar*, 128 F.4th at 1381 (quotation omitted).

★    ★    ★

We **AFFIRM** the defendants' convictions.